**BREMER v. WHITE, Collector of Internal Revenue.**

**NEW ENGLAND TRUST CO. v. SAME.**

**Nos. 5512, 5513.**

District Court, D. Massachusetts.

March 1, 1935.

Burton E. Eames and Tyler, Eames, Wright & Reynolds, all of Boston, Mass., for plaintiffs.

Francis J. W. Ford, U. S. Atty. (by J. Duke Smith, Sp. Asst. to U. S. Atty.), of Boston, Mass., Frank J. Wideman, Asst. Atty. Gen., and Andrew D. Sharpe and Edward P. Hodges, Sp. Assts. to Atty. Gen., for defendant.

BREWSTER, District Judge.

The above actions at law are brought to recover federal income taxes alleged to have been unlawfully exacted by the defendant. The actions were tried without jury upon agreed statements of fact. They may be disposed of in one opinion. The agreed facts common to both Nos. 5512 and 5513, briefly summarized, may be stated as follows:

1. The General Electric Company, a New York corporation, in December, 1924, was the owner of 250,000 shares of the common capital stock and 300 shares of the preferred capital stock of the Electric Bond & Share Company, a corporation which the General Electric Company had, in 1905, organized for the purpose of holding securities acquired from various public utilities to which the General Electric Company had sold its products. At the time of the organization of the Electric Bond & Share Company, the General Electric Company turned over $4,000,000 in securities and cash and received in return 20,000 shares of preferred and 20,000 shares of common stock of the Electric Bond & Share Company.

By 1924 the capital of the Electric Bond & Share Company had been increased to $50,000,000 and its assets to over $76,000,000. Much of this increase of capital stock had

been issued for securities purchased of the General Electric Company.

On December 30, 1924, the General Electric Company had outstanding 1,802,870 shares of its common stock. On that day the directors voted to organize a new corporation having a total authorized capital stock of 1,802,870 shares without par value and to separate from the other assets of the company the 250,000 shares of the common stock and the 300 shares of the preferred stock of the Electric Bond & Share Company by transferring the same to the new company, for which the new company was to issue all of its authorized capital stock to the stockholders of the General Electric Company, who would receive one share of stock in the new corporation for each share of common stock of the General Electric Company.

The purpose of this action is set forth in a letter addressed to all stockholders to the following purport:

"December 30, 1924

"To the Stockholders of the General Electric Company:

"The General Electric Company having decided to dispose of all of its shareholdings in the Electric Bond and Share Company will do so by organizing a new corporation under the laws of the State of New York with an authorized capital stock of 1,802,870 shares without par value (being the same number of shares as the outstanding Common stock of the General Electric Company), and by transferring to such new corporation:

"(a) 300 shares of the 6% cumulative Preferred stock of Electric Bond and Share Company having a par value of $30,000, and

"(b) 250,000 shares of the Common stock of the Electric Bond and Share Company (being the entire Common stock) having a par value of $25,000,000, and now paying dividends at the rate of 8% per annum.

"The new corporation in consideration of such transfer will distribute its shares to the stockholders of record of the General Electric Company as of January 15, 1925, ratably in proportion to their holdings; that is to say, one share of stock of the new corporation to each General Electric share. This distribution will be made on February 1, 1925, or as soon thereafter as the necessary legal steps can be taken, when certificates for shares of the new corporation will be mailed to all stockholders of the General Electric Company.

"Dividends on the new stock will accrue after January first and will be paid quarterly by the new corporation on the fifteenth days of April, July, October, and January. The present rate of dividend on the Electric Bond and Share stock will justify the new corporation in paying dividends of not less than $1.00 per share per annum.

"By order of the Board of Directors
"Owen D. Young, Chairman
"Gerard Swope, President"

The plan, as outlined above, was consummated by the organization of the Electric Bond & Share Securities Corporation (hereinafter referred to as the "Securities Corporation"), and the issuance of all of its authorized capital stock to holders of common stock in the General Electric Company.

Thereafter, in July, 1926, by reason of a change in the capital structure of the General Electric Company, each holder of common stock in that company received four shares of new common stock for every share held by him.

2. The plaintiff New England Trust Company (hereinafter referred to as the "Trust Company") is the sole surviving trustee under a written declaration of trust dated July 27, 1905, executed by the plaintiff Bremer, by the terms of which instrument the trustor was to receive the income during her lifetime.

The Trust Company, as trustee as aforesaid, held 366 shares of common stock of the General Electric Company and accordingly, on March 3, 1925, received 366 shares of the Securities Corporation which were held as income until August 5, 1926, when, upon the request of the plaintiff Bremer, they were sold and the net proceeds of $25,-632.81 turned over to her. It was agreed that the fair value of the shares of the Securities Corporation was, on March 3, 1925, $66.50 per share.

As a result of the recapitalization of the General Electric Company, the Trust Company had received, and it held, 1,464 shares of the common stock of that company until September 23, 1929, when it sold 164 shares, deriving from the sale net proceeds of $40,-108.24.

3. The Commissioner of Internal Revenue determined that the transaction whereby the stock of the Securities Corporation was issued was a "reorganization" within the meaning of section 203 of the Revenue Act of 1924 (26 USCA § 934), and that the cost basis of the common stock of the Gen-

eral Electric Company and of the Securities Corporation, for the purpose of determining gain or loss upon any later sales thereof, should be respectively the proportionate parts of the cost basis of the said common stock of the General Electric Company immediately prior to said distribution, which was agreed to be $41,358.23, said proportion being determined by the relation which the fair market value of said common stock of the General Electric Company and said stock of the Securities Corporation respectively bore to the total market values of both immediately upon such distribution, and by reason of this determination held that the cost basis of the 366 shares of common stock of the General Electric Company was 79.041 per cent. of $41,358.23 and the cost basis of the 366 shares of the Securities Corporation was 20.959 per cent. of said sum, and accordingly determined that the cost of the 164 shares of the General Electric Company was $32,689.96 and the cost of the 366 shares of the Securities Corporation $8,668.27, with certain adjustments not in controversy.

### Facts Respecting No. 5512.

4. In her return of net income for the year 1926, the plaintiff Bremer returned, as income arising from the sale of the 366 shares of the Securities Corporation, the entire net proceeds of the sale and paid a tax accordingly. Later, she filed an amended return in which she treated as income only $1,293.81, being the difference between the net proceeds of $25,632.81 and $24,339, the value on March 3, 1925, of the shares in the Securities Corporation on a basis of $66.50 per share. She duly filed claim for refund of $4,820.70. The Commissioner determined that the taxable profit derived from the sale was $16,964.54, which represented the difference between the cost of $8,668.27 (see paragraph 3 above) and $25,632.81. The Commissioner thereupon allowed the claim for refund in the amount of $1,876.96, which sum, with interest, was paid. The balance of the refund, amounting to $2,943.74, is the amount now claimed by the plaintiff Bremer.

### Facts Respecting No. 5513.

5. In its federal income tax return for the year 1929, the Trust Company, as trustee under said indenture of trust, showed a tax liability of $1,931.42, which was paid. Thereafter an amended return was filed, showing a tax liability of $1,912.90, and a claim for refund of $18.52 was duly filed. In arriving at this tax liability, which arose solely from the sale in 1929 of 164 shares of the common stock of the General Electric Company, the Trust Company took as the cost basis of the entire 1,464 shares $40,113.44, which figure represented the agreed cost basis of $41,358.23, *less* certain adjustments, and reported as taxable gain $35,614.64, the difference between $40,108.24, the amount of the net proceeds from said sale (See paragraph 2 above), and $4,493.60, the proportion of the total cost represented by the said 164 shares.

This plaintiff duly filed a claim for refund for $18.52. Thereafter the Commissioner of Internal Revenue determined, in accordance with the method outlined in paragraph 3, that the cost of the 164 shares was $3,552.24, leaving a taxable gain of $36.556, and assessed an additional tax of $100.20 which was paid with interest and for which a claim for refund was filed. These claims for refund were disallowed, and the plaintiff brings this action to recover a total of the two claims, with interest, or $131.61.

In determining the amount of taxable gain in both of these actions, the Commissioner of Internal Revenue proceeded upon the assumption that the action of the General Electric Company in organizing the Securities Corporation and causing that corporation to issue its shares directly to holders of common stock in the General Electric Company was a distribution, in pursuance of a plan of reorganization, to its shareholders of stock in another corporation, a party to the reorganization, and was subject to the provisions of section 203 (c) of the Revenue Act of 1924 (26 USCA § 934 (c).

The validity of this assumption is denied by the plaintiffs, and two questions arise out of these controversies. The first is whether the plan adopted by the General Electric Company was a plan of reorganization within the meaning of the statute; and, second, whether the apportionment of the cost adopted by the Commissioner was lawful.

The pertinent provisions of the Revenue Act of 1924, c. 234, follow:

### Recognition of Gain or Loss from Sales and Exchanges.

Section 203. "(a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202

[section 933 of this title], shall be recognized, except as hereinafter provided in this section. * * *

"(c) If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized. * * *

"(h) As used in this section and sections 201 and 204 [sections 932 and 935]—

"(1) The term 'reorganization' means * * * (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or * * *

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

"(i) As used in this section the term 'control' means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation." U. S. C. title 26, § 934 (a), (c), (h) (1, 2), (i), 26 USCA § 934 (a), (c), (h) (1, 2), (i).

Basis for Determining Gain or Loss, Depletion, and Depreciation.

Section 204. (a) (9) "If the property consists of stock or securities distributed after December 31, 1923, to a taxpayer in connection with a transaction described in subdivision (c) of section 203 [section 934], the basis in the case of the stock in respect of which the distribution was made shall be apportioned, under rules and regulations prescribed by the Commissioner with the approval of the Secretary, between such stock and the stock or securities distributed." U. S. C. title 26, § 935 (a) (9), 26 USCA § 935 (a) (9).

I think it must be conceded that what the General Electric Company did in December, 1924, was not a reorganization within the common acceptation of the term, but

Congress has left no doubt as to what it intended to include under the term of "reorganization." The case at bar comes squarely within the definition. There was a transfer by the General Electric Company of a part of its assets to another corporation, and immediately after the transfer its stockholders were in control of the corporation to which the assets had been transferred.

I should have no doubt regarding the propriety of the action of the Commissioner in treating the transaction as a reorganization within the statute were it not for the case of Gregory v. Helvering, 55 S. Ct. 266, 268, 79 L. Ed. ——, decided January 7, 1935. In that case the petitioner was the owner of all the stock of the United Mortgage Corporation, a corporation which owned 1,000 shares of the Monitor Securities Corporation. The petitioner caused to be organized the Averill Corporation, to which was transferred the shares of the Monitor Securities Corporation for all of the shares in the Averill Corporation which were issued directly to the petitioner. Within a few days the Averill Corporation was dissolved and liquidated by distributing all the Monitor Securities Corporation shares to the petitioner. No other business was ever transacted, or intended to be transacted, by the company. In that case the court, conceding that if the reorganization in reality came within the meaning of the definition and the result was that the taxpayer escaped payment of the tax, the motive of the taxpayer was immaterial, but that if the whole undertaking was "in fact an elaborate and devious form of conveyance masquerading as a corporate reorganization, and nothing else," the transaction was not within the statutory provisions; the court holding that the transfer must be in pursuance of a plan of reorganization of corporate business and not a transfer of assets by one corporation to another in pursuance of a plan having no relation to the business of either.

I am of the opinion that the doctrine of that case must be confined strictly to the facts there presented; otherwise, the court would be modifying the statutory definition of the word "reorganization" as the word is used in the law.

The agreed facts are silent as to whether the Securities Company has liquidated and distributed among its stockholders the shares of the Electric Bond & Share Company. However that may be, it can hardly be said, in the case at bar, that the transfer

of the assets by the General Electric Company to the Securities Corporation was in pursuance of a plan which had no relation to the business of the General Electric Company. For many years the General Electric Company had been acquiring, in the course of its business, stock or other securities in public utilities which it had turned over to the Electric Bond & Share Company, receiving in return shares in that corporation.

In 1924, the General Electric Company had decided to dispose of its holdings in the Electric Bond & Share Company by transferring them to a new corporation, the shares of which were to be distributed among the shareholders of the General Electric Company. The mere fact that these shareholders became the ultimate recipients of the new shares does not take the case out of the definition because the term "reorganization" expressly included transfers where the stockholders of the transferor were immediately left in control of the transferee corporation. Here we are dealing with something more than a corporation having no business or corporate purpose. It must be assumed that the Securities Company continued to function as a corporation exercising its corporate powers for at least a substantial period of time after its organization.

While the question is not entirely free from doubt, in view of Gregory v. Helvering, supra, I have reached the conclusion that the facts of this case are distinguishable and that the Commissioner of Internal Revenue properly proceeded on the theory that the General Electric Company had effected a reorganization within the purport of the statute. It is very probable that the plan was adopted as a convenient method of distributing the stock of the Electric Bond & Share Company among the shareholders of the General Electric Company; but, as was stated in Gregory v. Helvering, supra, the motive of the taxpayer, even though he escapes payment of the tax, is not material.

 Having reached the conclusion that the Commissioner properly regarded the transfer of the shares of the Electric Bond & Share Company to the Securities Corporation as a reorganization, within the purview of the statute, the question is then presented whether the Commissioner was justified in apportioning the cost between the shares

of the Securities Corporation and of the General Electric Company.

On this aspect of the case the pertinent provisions of the Revenue Act of 1926 are to be found in section 204 (a) (9), 26 USCA § 935 (a) (9). The corresponding section of the Revenue Act of 1928 is section 113 (a) (9), 26 USCA § 2113 (a) (9). Section 204 (a) (9) is as follows:

"If the property consists of stock or securities distributed after December 31, 1923, to a taxpayer in connection with a transaction described in subdivision (c) of section 203 [section 934], the basis in the case of the stock in respect of which the distribution was made shall be apportioned, under rules and regulations prescribed by the Commissioner with the approval of the Secretary, between such stock and the stock or securities distributed."

Subdivision (c) of section 203 (26 USCA § 934 (c) referred to stock received pursuant to a plan of reorganization as above defined. Under the regulations authorized by this section, it was provided in substance that where the stock distributed was different from the stock in respect of which the distribution was made, the cost basis of the old shares should be divided between the old stock and the new stock in proportion to the respective values of the old and new at the time of distribution. The Commissioner, in determining gain resulting from the sales of the shares in the General Electric Company and in the Securities Corporation, apparently followed the regulation, and I see no valid ground for holding the regulation unauthorized or that its provisions are in derogation of the constitutional rights of the taxpayer. The Revenue Act of 1924, as we have seen, provided that no gain should arise at the time of the distribution pursuant to the plan of reorganization. The statute further provided that these tax-free distributions, if made after December 31, 1923, would be taxable when later sold and the basis for determining the gain was prescribed by the statute. Clearly, the taxpayer has received taxable income as a result of the reorganization. The Congress had power to postpone the tax on such income until such time as the distributed stock was disposed of by the recipient and to lay down rules for the determination of the gain arising from the reorganization.

The defendant's motion for judgment in each case may be allowed.